DECISION
Plaintiff appeals the Yamhill County Board of Property Tax Appeals' Real Property Order for the subject property identified as Tax Lot R4418B 03700, [1] for tax year 2008-09.
A trial was held in the Oregon Tax Courtroom, Salem, Oregon on February 11, 2010. Rick Sanai, Senior Attorney, Yamhill County Counsel, appeared on behalf of Plaintiff. Susan DeBolt (DeBolt), appraiser, testified on behalf of Plaintiff. John Abrams (Abrams), Defendant's son, appeared and testified on behalf of Defendant. Brett Veatch (Veatch), realtor, testified on behalf of Defendant.
Plaintiffs Exhibits 1, 6, 8, 10, 14, 15, 16, 19, 21, and 22 were offered and received without objection. Plaintiffs Exhibit 5 was offered and received with objection. Defendant's Exhibit A was offered and received with objection.
 I. STATEMENT OF FACTS
The above entitled matter is one of 49 appeals filed by Plaintiff challenging Yamhill County Board of Property Tax Appeals Real Property Orders reducing the 2008-09 real market value of undeveloped land parcels located in the Yamhill County West Wind Country Estate subdivision. *Page 2 
DeBolt, a 12-year employee of Plaintiff who is a registered appraiser, testified that she relied on a "straddle" study of land sales recorded in the county between 2006 and 2009 to determine the real market value of the land parcels. Her proposed real market value for the subject property, in addition to the real market values of the other 48 parcels, is set forth in Exhibit 21.[2] DeBolt testified that most, if not all, of the sales were within a three mile radius of the subject property, that all land parcels were "home sites," and that some parcels were located in "gated communities." She testified that the sale prices were "time trended" to the assessment date, January 1, 2008. For 12 land parcels, [3] DeBolt concluded that, because there was no road access and no "on-sites," which she defined as water, utilities and sewer, the real market values of those parcels were substantially less than the other parcels. (Ptf's Ex 21.) She testified that one parcel, identified as Tax Lot R4418B 01600, (TC-MD No 090776D), is a 2.53 acre "commercial property." DeBolt testified that, in determining the real market value of that parcel, she compared it to "other similar properties" and concluded that $10 per square foot is the correct value.
In support of her values, DeBolt referenced Defendant's website, [4]
noting the list prices for the "first ten lots that have now been made available for sale * * *." (Ptf's Ex 5 at 5-7.) Abrams asked DeBolt if she knew the date when those listing prices were published. DeBolt *Page 3 
testified that she did not, but she referred to an email from Gearbox Studios, dated September 4, 2009, which stated that Defendant's website "was taken live on approximately 8/01/07 * * * And turned off on 12/18/08." (Ptf's Ex 6.)
DeBolt testified that a building permit was issued for Tax Lot R4418B 01300, (TC-MD No 090769D) on November 28, 2007. (Ptf's Ex 8.) Abrams testified that during the "short window of opportunity" between the passage of Measure 49 and the county's decision to require a vesting process, Defendant obtained a building permit.
On December 7, 2007, Abrams emailed the county because he was concerned about the passage of Measure 49 on November 6, 2007, and the "need to go thru a vesting process." (Ptf's Ex 10.) Yamhill County Legal Counsel, John Gray, wrote that his "advice to Mike [Brandt] will be that you still have to go through the process" and advised Abrams that he should "talk to your own lawyer about the issue." (Id.)
On January 3, 2008, Michael Brandt, Yamhill County Planning Director, wrote to Defendant, stating that "the requirements of Ballot Measure 49may act to limit or prohibit some or all of the development authorized bythe land use approval issued to you. * * * Yamhill County will not issue additional permits or approvals necessary to implement your land use approval unless you receive either a State of Oregon approval of a Measure 49 claim or a determination that you have a common law vested right to complete and continue the use described in your Measure 37 waiver. In theabsence of a vested right determination or an approved Measure 49 claim,continuing work under any existing permit is strongly discouraged and isdone at your own risk." (Ptf's Ex 14 (emphasis in original).) *Page 4 
On January 17, 2008, Defendant filed her Application for Final County Vesting Decision. (Ptf's Ex 15.) In her application, Defendant acknowledged that she understood "that due to uncertainties of Measure 49, I proceed with any development based on a Measure 37 waiver at my own risk." (Id. at 2.) Defendant attached to her application the Final Staff Report and Recommendation, June 3, 2005, stating that she was seeking "compensation in the amount of $20,500,000 for the reduction in fair market value as a result of certain land use regulations that are alleged to restrict the use of certain private real property[,] * * * approximately 342 acres of land." (Id., at 7, 8, 14-15.) Abrams testified that the "requested compensation was approximately $60,000 per acre," which was the value per acre he "requested at the board of property tax appeals [BOPTA] hearing." He testified that BOPTA set the values at "$70,000 to $85,000 per acre." Abrams further testified that DeBolt's proposed real market values total approximately $11,600,000 which is close to $237,000 per acre. (See Ptf's Ex 21 (listing Ptf's proposed real market values).)
As the application and appeal process continued into the summer of 2008, Abrams emailed DeBolt a request for the "values for" the subdivision. (Ptf's Ex 19 at 1.) DeBolt wrote that the "values that will be placed on your sub-division will be as following: `½ acre $245,000; 1 acre $294,000; 1+ acre $320,000; and Commercial lot will be $12.00 a sq ft." (Id.) Abrams questioned DeBolt whether each of her values for the various lots were $5,000 less than the website listing prices; DeBolt admitted that she reduced the "advertised values" by $5,000. *Page 5 
Abrams asked if "advertised values are used to set real market value." DeBolt responded that they are not; "you need to look at the property."
Abrams testified that few lots located in the subdivision have been sold. He testified that the enactment of Measure 49 in November 2007 was an "absolute government restriction." In support of his conclusion that Measure 49 was an "absolute government restriction," Abrams read excerpts from a decision by the Honorable John L. Collins, Presiding Judge, Yamhill County, of the county who reviewed the vesting officer's decision. (Ptf's Ex 16.) In sum, Abrams emphasized the following statement written by Judge Collins:
 "All Measure 37 rights were extinguished. [footnote omitted] New options are created which may, or may not, allow use and/or continued development of property the landowners contemplated under Measure 37 waivers."
(Id. at 4.) Abrams testified that Judge Collins' decision affirmed the vesting officer's decision that "the landowners have a vested right to complete development of the property under principles of common law * * *." (Id. at 17.) Abrams testified that the "60 day appeal period" of Judge Collins' decision did not end until January 2009, and he concluded that the landowners were not "free to market until the appeal period was extinguished." Abrams testified that "West Wind was the only subdivision that was not appealed to the Court of Appeals."
Abrams testified that few subdivision lots have been sold. He testified that the building permit for Lot 1 was obtained "in the window" between the enactment of Measure 49 and the county's Ordinance 823 which required a vesting application. According to Abrams, Defendant still owns Lot 1. Abrams testified that Lot 32 was sold to a family friend on April 10, 2008, for $294,000. He testified that the Lot 32 sale came with lots of "guarantees" if clear title could not *Page 6 
be delivered and was not a "typical arm's length transaction." Abrams concluded that "Measure 37/49 properties" were under a "cloud" and could not be sold without "disclaimers."
Veatch, a licensed broker for over 20 years, testified that he contacted title companies representatives who told him that title companies "would not be able to issue unclouded title" until the "Measure 49 vesting" was resolved. He testified that he had been marketing a Yamhill County subdivision and potential buyers left after the Measure 49 vesting issues were disclosed. In response to Abrams' questions, DeBolt testified that she did not know if any of the properties she identified as comparable required "disclaimers" on the deed because they were "Measure 37 or 49 properties."
 II. ANALYSIS
At issue in this case is the subject property's real market value for tax year 2008-09. Real market value (RMV) is defined in ORS 308.205(1)[5]
which reads:
 "[RMV] of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
There are three methods used to determine real market value: (1) the cost approach; (2) the sales-comparison or comparable sales or market approach; and (3) the income approach. Allen v. Dept. of Rev.(Allen),17 OTR 248, 252 (2003). See also OAR 150-308.205-(A)(2)(a) (stating that all three approaches to valuation of real property must be considered, although all three may not be applicable to the valuation of the subject property). This court has statutory authority to determine value based on the evidence presented.[6] "In all proceedings before the judge or a *Page 7 
magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden ofproof shall fall upon the party seeking affirmative relief * * *." ORS305.427 (emphasis added). Plaintiff must establish its claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." Schaefer v. Dept. of Rev., TC No 4530 at 4-5 (July 12, 2001) (citing Feves v. Dept. of Rev., 4 OTR 302 (1971)). This court has stated that it is not enough for a plaintiff to criticize a defendant's position. Poddar v. Dept. of Rev., 18 OTR 324, 332 (2005) (quoting Woodsv. Dept. of Rev., 16 OTR 56, 59 (2002) (citation omitted).)
In the matter before the court, Plaintiff is "seeking affirmative relief" from the real market value determined by the Yamhill County Board of Property Appeals; thus, Plaintiff has the burden of proof. Unfortunately, that burden has not been met.
DeBolt testified that, to determine the subject property's real market value, she used a "straddle study" of land sales in the county between 2006 and 2009. Plaintiff did not provide the court with a copy of the straddle study or detailed information about the contents of the study, including land size, date of sale, unadjusted sale price, and time trend analysis. Plaintiff did not submit an appraisal report with appropriate supporting documents. DeBolt could not answer Defendant's query whether any of the land (like the subject property) was made available for sale due to the passage of Measures 39 or 47. Plaintiff's only evidence was a map, showing the location of the land sales contained in the straddle study. (Ptf's Ex 22.) That evidence is insufficient to support Plaintiff's value determinations or for the court to make its own value determination. *Page 8 
 III. CONCLUSION
Because there is no evidence to support Plaintiffs value determination nor evidence that the court can use to make a value determination, Plaintiffs appeal is denied. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs appeal is denied.
Dated this ___ day of April 2010.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This Decision was signed by Presiding Magistrate Jill A. Tanner onApril 15, 2010. The court filed and entered this Decision on April 15,2010.
[1] Plaintiff's Exhibit 21. Complaint incorrectly stated Tax Lot.
[2] Plaintiff's Exhibit 21 includes one parcel identified as Tax Lot R4418B 03600 that was not appealed.
[3] Those appeals were assigned the following case numbers: TC-MD No 090735D, 090736D, 090737D, 090744D, 090745D, 090746D, 090747D, 090748D, 090749D, 090750D, 090751D, and 090752D.
[4] WestWindsCountryEstates.com.
[5] All references to the Oregon Revised Statutes (ORS) are to 2007.
[6] ORS 305.412: "When the determination of real market value or the correct valuation of any property subject to special assessment is an issue before the tax court, the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." *Page 1